UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KARI L. WATT,

     Plaintiff,

v.                          Case No. 15-CV-0196

BROWN COUNTY,

     Defendant.

## DECISION AND ORDER

     Plaintiff Kari Watt filed this employment discrimination action against Defendant Brown County, alleging that Brown County intentionally discriminated against her on the basis of her disability, a right rotator cuff tear. More specifically, Plaintiff alleges that Defendant failed to reasonably accommodate her disability and terminated her in reckless disregard for her federally protected rights under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*, and the Americans with Disabilities Act Amendments Act of 2008 (ADAAA). This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 & 1343. This case is now before the Court on Defendant's motion for summary judgment. ECF No. 15. Though Plaintiff has not filed a motion for summary judgment, she suggests in her brief in opposition that this Court should grant summary judgment in her favor pursuant to Fed. R. Civ. P. 56(f). Also pending before this Court is Plaintiff's motion for leave to file a surreply in opposition to Brown County's motion for summary judgment. ECF No. 36. For the reasons that follow, Plaintiff's motion for leave to file a surreply will be granted, Defendant's motion for summary judgment will be only partially granted, and the Court will decline to grant summary judgment for Plaintiff pursuant to Fed. R. Civ. P. 56(f).

## BACKGROUND

Beginning in May, 1998, Plaintiff Kari Watt worked for Ashwaubenon Public Safety as a Public Safety Telecommunicator. Watt's position was absorbed into Defendant Brown County in October 2010 after Ashwaubenon Public Safety merged with Defendant. Watt's duties in Defendant's 911 Center included receiving calls for emergency services via 911 and non-911 lines and dispatching police, fire, and emergency calls via electronic and radio dispatch equipment. Watt's employment with Defendant ceased when Defendant terminated her employment on April 2, 2013.

Watt performed her duties as a Telecommunication Operator with Defendant at a two-tiered workstation. A workstation similar to the one Plaintiff worked from is depicted in Photograph 1 below:



Photograph 1. Walcheske Dec. Ex. E at 7, Workstation at Brown County, ECF No. 29-5.

Telecommunication Operators did not have assigned workstations. Instead, they used the available workstations depending upon shift assignments. The workstations have two height-adjustable tiers which may be lowered or raised at the discretion of the individual Telecommunication Operator. The lower (front) tier contains buttons for controlling the heights of the tiers, a computer keyboard, a mouse, and a keypad for the telephone. The second (back) tier holds the four computer monitors, which include three call screens and a touchscreen monitor for the telephone. The telephone monitor is the only touchscreen. Telecommunication Operators have the ability to use either the touchscreen monitor or the keypad to use the telephone.

Around February or March of 2012 Watt was diagnosed with a rotator cuff tear in her right shoulder. Watt underwent surgeries for her recurrent rotator cuff tears on March 9, 2012, October 1, 2012, and April 9, 2013. After her first surgery Watt was off work from March 9, 2012, to May 30, 2012, and was paid short term disability (STD) benefits for 83 days. Beginning on September 27, 2012, Watt began missing work due to her second surgery. Watt was paid STD benefits from September 30, 2012 to January 6, 2013, for a total of 99 days. On January 7, 2013, Watt returned to work with significant medical restrictions. She could only work four hours per day and could not use her right arm. Watt used STD to offset her lost income due to her reduced work hours during this period.

After her second surgery, Watt did not return to her Telecommunication Operator position, but instead was assigned light-duty work consisting of developing a training manual and updating systems manuals. On January 8, 2013, Watt was medically cleared to use both hands to write and type, though her other restrictions remained. On March 8, 2013, Watt was cleared to work six hours a day. On April 2, 2013, Watt was removed from payroll and terminated. On that same day Watt

3

was given a letter explaining the reasons for her termination. The letter stated that Watt was being terminated because she had exhausted her 180 days of STD and was unable to work full-time without restrictions. Brown County's STD policy provides coverage for a maximum of 180 calendar days. ECF No. 24-1. Though Brown County will not force an employee to file for long term disability benefits, if the employee cannot return to work at the end of the six-month STD period, the employee is removed from payroll.

Watt's third surgery took place on April 9, 2013, rendering her unable to work until April 24, 2013. Watt was cleared for one-handed work on April 24, 2013, and by July 3, 2013, Watt was able to use both arms (though she was restricted from performing lifting above waist level with her right arm). By September 24, 2013, Watt was only restricted in her ability to lift weight and by November 4, 2013, Watt was cleared to return to work without any restrictions. Watt applied to be rehired for a Telecommunication Operator position in August 2013 but her application for employment was denied.

**ANALYSIS**

**A. Summary Judgment Standard**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460–61 (E.D. Wis.1991). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In deciding a motion for

4

summary judgment, the court will view the facts in the light most favorable to the non-moving parties. *Crull v. Sunderman*, 384 F.3d 453, 460 (7th Cir. 2004).

**B. Plaintiff's Motion for Leave to File a Surreply**

As an initial matter, Plaintiff's motion for leave to file a surreply in opposition to Defendant's motion for summary judgment (ECF No. 36) will be granted. "The decision to permit the filing of a surreply is purely discretionary and should generally be allowed only for valid reasons, such as when the movant raises new arguments in a reply brief." *Meraz-Camacho v. United States*, 417 F. App'x 558, 559 (7th Cir. 2011); *see Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 631 n.2 (7th Cir. 2010). Here, Plaintiff has met her burden for leave to file a surreply because Defendant's reply brief cited to evidence that was not even in existence at the time Defendant filed its motion for summary judgment. ECF No. 31-3; *see also* ECF Nos. 32-1, 32-2, 32-3, 32-4, 32-5, 32-6. Defendant's request for an opportunity to file a response to Plaintiff's surreply will be denied. Defendant sufficiently responded to Plaintiff's surreply in its brief in opposition to Plaintiff's motion for leave to file a surreply. ECF No. 37.

**C. Rehiring**

In her complaint Watt alleged that the County intentionally discriminated against her on the basis of her disability by subjecting her to a different hiring criteria and by denying employment to her in reckless disregard for her federally protected rights under the Americans with Disabilities Act, as amended by the ADAAA, 42 U.S.C. § 12101, *et. seq*. Compl. 15–16, ECF No. 1. The County moved for summary judgment on this issue, arguing that: Watt was subjected to the normal hiring procedure; Watt was not the best person for the position; similarly situated employees were not treated more favorably; there is no evidence of pretext; and there is no direct evidence of

5

discrimination against Watt. Watt failed to respond to these arguments in her brief in opposition. As such, Watt has abandoned this claim and summary judgment will be granted for the County on Watt's rehiring claim. *See Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999).

**D. Termination**

The ADA prohibits discrimination on the basis of disability against "qualified individual[s]." 42 U.S.C. § 12112(a). To establish a claim under the ADA, a plaintiff must prove by a preponderance of the evidence that she was a qualified person with a disability and that her employer took an adverse action against her on account of her disability. *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 571–72 (7th Cir. 2001). The term "disability" is defined in the ADA means any of the following:

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such and impairment (as described in paragraph (3)).

42 U.S.C. § 12102(1). Paragraph 3 qualifies Paragraph (1)(C) by stating that it does not apply to impairments that are "transitory and minor." 42 U.S.C. § 12102(3). Paragraph 3 further states "[a] transitory impairment is an impairment with an actual or expected duration of 6 months or less." *Id.*

For purposes of its motion for summary judgment, the County has not challenged Watt's assertion that her torn rotator cuff constitutes a disability within the meaning of the ADA or that the County had knowledge of her condition. Instead, the County argues that Watt cannot prove that the County terminated her on account of her disability. The County contends:

> Watt cannot establish that the reasons given for the termination were factually baseless, not the real reason or insufficient to motivate the decision makers. In March

6

> of 2013, Watt was advised that if she exhausted her 180 days of short term disability (STD), she would need to apply for long term disability. (DPF 45) Because her 180 days of STD were exhausted and she could not return to her regular work schedule or job duties, pursuant to Brown County policy and the short term disability plan, Watt was removed from the payroll. (DPF 50)

Def.'s Br. in Supp. at 8, ECF No. 16. In other words, the County claimed, at least initially, that it terminated Watt because she exhausted her short term disability benefits and was unable to work full-time and without restrictions.

The problem with the County's argument, however, as Plaintiff points out, is that terminating a person with a disability because they cannot return to work without any limitations ignores the mandate of the ADA that employers must make reasonable accommodations for individuals with disabilities. 42 U.S.C. § 12112(b)(5) (defining discrimination under ADA as "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered employee can demonstrate that the accommodation would impose an undue hardship on the operation of the business or such covered entity"). Thus, policies requiring that employees be 100% healed in order to return to work have been held to constitute per se violations of the ADA as applied to individuals with disabilities. *See Steffen v. Donahoe*, 680 F.3d 738, 748 (7th Cir. 2012) ("Since a '100% healed' policy prevents individual assessment, it necessarily operates to exclude disabled people that are qualified to work, which constitutes a per se violation."); *see also Henderson v. Ardco, Inc.*, 247 F.3d 645, 653 (6th Cir.2001) (stating that all courts "agree that a 100% rule is impermissible as to a disabled person—but one must first be disabled").

Apparently recognizing the problem, the County argues in its reply brief that Watt was not a qualified individual at the time it terminated her employment and that no reasonable

7

accommodations would have made her qualified. The ADA defines "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Regulations enacted under the ADA create a two-prong test for determining whether an individual with a disability is qualified:

> First, the disabled individual "satisfies the requisite skill, experience, education and other job-related requirements of the employment position [he] holds or desires." 29 C.F.R. § 1630.2(m). Second, he "can perform the essential functions of such position" with or without accommodation. *Id.*

*Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1058 (7th Cir. 1998). The determination about whether an individual is qualified "should be based on the qualified disabled individual's capabilities at the time of the employment decision." *Id.* at 1059.

Since Watt had held the position of telecommunications officer since 1998, it seems clear that Watt had the "requisite skill, experience, education and other job-related requirements for the job." The County argues, however, that at the time it terminated Watt on April 2, 2013, she could not perform the essential functions of her position. The County contends that Watt was restricted to doing work with only her left had and no work over shoulder level. In support, the County cites to an office note from Watt's doctor which states in part:

> On a self-reported survey, [Watt] reports difficulty sleeping, difficulty using her arm away from the body for a prolonged period of time. ***She cannot work as a dispatcher.*** Reaching overhead she has lost some significant strength and function of the arm. She denies any neurogenic symptoms. She has no radicular complaints. She is quite debilitated by the shoulder pain and dysfunction with her recurrent cuff tear.

Letter from Dr. Hennigan at 1, ECF No. 20-3 (emphasis added). The County also discusses the fact that Watt's position at the 911 Call Center demanded timely responses in emergency situations that

8

Watt was not able to perform efficiently. However, as to this second point, the County is only able to cite to Watt's performance on her July 2013 application test—which took place after her third surgery and, therefore, is outside the scope of the relevant time frame for the inquiry here.[1] Finally, the County contends that the Telecommunication Operator position required reaching and that Watt could not reach with her right hand due to the medical restriction.

Watt, on the other hand, argues that she could have performed the essential functions of a Telecommunication Operator with or without reasonable accommodations. Specifically, she claims that her disability did not prevent her from performing essential tasks of the position. Watt first argues that her medical restrictions did not prevent her from reaching above shoulder height at the time of her termination. Next, Watt contends that Telecommunication Operators can still dial the phone (an essential function) without reaching to touch the touchscreen on the second level of the workstations. According to Watt, there is evidence that Telecommunication Operators could simply use a lower-tier phone keypad to perform the essential duties of the position. Alternatively, Watt argues that there were numerous accommodations available that would have allowed her to perform the essential functions of the position, including: lowering her workstation, using a taller chair, using solely the lower-level of the workstation, performing her duties one-handed, or even granting her an unpaid leave of absence.

I find that there is a genuine dispute of fact regarding Watt's ability to perform the essential tasks of the Telecommunication Operator position. Though Watt continued to have some limitations

---

[1] Plaintiff also indicates that she was unable to type with both hands during the test because she was waiting to undergo bilateral carpal tunnel surgery. Pl.'s Surreply 8, ECF No. 36-1.

on April 2, 2013,[2] factual disputes exist regarding what capabilities were required of a Telecommunication Operator and whether accommodations would have permitted Watt to perform the essential functions of a Telecommunication Operator. For example, there is a factual dispute regarding the meaning of an email sent by Shelly Nackers, the County's Communications Manager. Nackers' email stated that Watt's inability to reach over her shoulder "should not be a problem, we really do not reach over our shoulders for anything unless you are *sitting on the floor*." ECF No. 29-3 (emphasis added). The County argues that "floor" in Nackers's email refers to the floor where the Telecommunication Operators all sit or stand and direct calls. Plaintiff argues that "floor" means "floor," i.e., the lower surface of a room. Other evidence paints a similarly mixed picture. *Compare* ECF No. 33-3 ("She does not need to do any over the shoulder work while call taking/dispatching."), *with* Letter from Dr. Hennigan at 1, ECF No. 20-3 ("She cannot work as a dispatcher."), *and* Smith Aff. 8, ECF No. 23 ("[S]he would have been required to reach at or above shoulder level."). As such, for the purposes of summary judgment, the County has failed to show that essential functions of the Telecommunication Operator position necessarily required reaching to touch a screen.

Likewise, factual disputes remain regarding whether particular accommodations could have allowed Watt to perform the essential functions of the position. The fact that Watt applied for and remained on temporary disability suggests that she herself thought she was incapable of performing the essential functions of her job. But other facts in the record raise a question about whether a taller

---

[2] When Plaintiff returned to work on January 7, 2013, she was originally limited to four hours of work per day and no use of her right arm. ECF No. 24-7. On January 8, 2013, that restriction was revised to allow Plaintiff to use her right hand to write. ECF No. 24-8. Her restriction was clarified on January 15, 2013, to allow writing and typing while prohibiting over shoulder level work, limiting lifting, and restricting Plaintiff to 4 hours of work per day. ECF No. 24-9. By March 8, 2013, Plaintiff's restriction allowed her to work six hours per day.

10

chair, lower workstation, or use of only one hand could have allowed Watt to perform the essential functions of the position. Critically, it stands to reason that given the layout of the workstations described by the parties, the kinds of adjustments sought by Watt (making her taller or the monitors lower) would have allowed her to perform the tasks without over-shoulder reaching.

For these reasons, the County is not entitled to summary judgment on Watt's claim that it terminated her on account of her disability in violation of the ADA.

**E. Reasonable Accommodations**

Watt also claims that the County failed to accommodate her as required by the ADA. Under the ADA, "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee" is a form of discrimination against a qualified individual unless the employer "can demonstrate that the accommodation would impose an undue hardship on the operation of" their business. 42 U.S.C. § 12112(b). "To establish a prima facie case for failure to accommodate, 'a plaintiff must show that: (1) he is a qualified individual with a disability; (2) the employer was aware of his disability; and (3) the employer failed to reasonably accommodate the disability.'" *James v. Hyatt Regency Chicago*, 707 F.3d 775, 782 (7th Cir. 2013) (quoting *Kotwica v. Rose Packing Co.*, 637 F.3d 744, 747–48 (7th Cir. 2011)). "[T]he standard rule is that a plaintiff must normally request an accommodation before liability under the ADA attaches." *Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 899 (7th Cir. 2000). When an employee requests an accommodation, the employer is required to engage in a flexible, interactive process to identify a reasonable accommodation. *Beck v. University of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1135 (1996). Of course, "the failure to engage in the interactive process required by the ADA is not an independent basis for liability under

11

the statute, and that failure is actionable only if it prevents identification of an appropriate accommodation for a qualified individual." *Basden v. Professional Transp., Inc.*, 714 F.3d 1034, 1039 (7th Cir. 2013).

The County argues it is entitled to summary judgment on this claim because the undisputed evidence establishes that it did accommodate Watt's medical restrictions by providing her light work and reduced hours. The County contends that the fact that it did not terminate Watt in January of 2013 "shows the flexibility and the individualized assessment employed by the County in its application of its policy of removing employees from the payroll after exhaustion of their STD. The County also repeats its argument that none of the accommodations suggested by Watt, i.e., lowering her work station, providing a taller chair, providing unpaid leave, transferring her to a vacant position, would have allowed her to perform the essential functions of her job.

The County is not entitled to summary judgment on Watt's failure to accommodate claim. As an initial matter, it is not the case that Watt's continued employment with the County from January 7, 2013, through April 2, 2013, was an attempt to accommodate Watt and engage in the required "interactive process." It is true that Watt had exhausted her 180 days of STD by January 7, 2013. But the County's failure to terminate her at that time appears to have been the result of a mistake. Emails from the County's employees suggest that the reason for the delay in terminating Watt immediately after she exhausted her STD was because the County miscalculated the time she was on STD. *Compare* ECF No. 24-2 (noting that by March 15, 2013, Plaintiff had used 176 days of STD), *with* ECF No. 33-3 (stating that Plaintiff had exhausted her STD by January 1, 2013).

The County's remaining arguments concerning whether other accommodations suggested by Watt would have allowed her to perform her job likewise fail. The County's argument that

12

accommodations such as a taller chair or lowering the work station would not permit Watt to perform her duties are subject to factual disputes that preclude entry of summary judgment in favor of the County. Other suggested accommodations, such as continuing Watt on light duty, placing her in a vacant position or giving her an unpaid leave of absence would all have allowed Watt to continue her employment for the relatively brief period of time she needed to regain full functioning. The County's argument that these suggested accommodations were not reasonable at best raises factual issues that are also not resolvable on summary judgment. Accordingly, the County's motion must be denied on Watt's failure to accommodate claim as well.

**F. Summary Judgment in Favor of Watt**

Finally, Watt has asked the court to consider granting summary judgment in her favor pursuant to Rule 56(f)(1), which authorizes the court to grant summary judgment for the non-movant after giving the non-movant notice and an opportunity to respond. Watt notes that a 100% healed policy is a per se violation of the ADA and argues that because the undisputed evidence shows that the County applied such a policy in terminating her employment, summary judgment should be granted in her favor. But as already noted, a 100% healed policy is only a violation of the ADA if applied to a qualified individual with a disability. *See Powers v. USF Holland, Inc.*, 667 F.3d 815, 819 (7th Cir. 2011) (citing *Henderson v. Ardco, Inc.*, 247 F.3d at 653). It is not clear on this record whether Watt was such an individual.

It is true that the County did not challenge Watt's allegation that her torn rotator cuff constituted a disability in its motion for summary judgment. But it did not concede the point either, except for purposes of its motion. In an ADA case, the plaintiff has the burden of proving she has a disability, and Watt has produced neither evidence or argument that the injury she sustained meets

13

the statutory definition of disability. The issue is far from clear. *See, e.g., Settle v. S.W. Rodgers Co., Inc.*, 998 F.Supp. 657, 662 (E.D. Va. 1998) (holding that former employee's allegation that he had rotator cuff shoulder injury was insufficient, by itself, to show that he had "disability" within meaning of ADA). While the court in *Settle* also rejected the defendant's argument that a rotator cuff injury was insufficient as a matter of law to constitute a disability and the case was decided under a previous version of the law, it nevertheless suggests that the issue is not a given. Since neither party has raised the issue, the court will not decide it and therefore declines Watt's invitation to grant summary judgment in her favor.

## CONCLUSION

Based upon the foregoing analysis Defendant's motion for summary judgment (ECF No. 15) is **GRANTED IN PART AND DENIED IN PART**. The motion is granted as to Plaintiff's rehiring claim, but denied in all other respects. Plaintiff's suggestion that this Court grant summary judgment for Plaintiff pursuant to Fed. R. Civ. P. 56(f) (ECF No. 25) is **DENIED**. Additionally, Plaintiff's motion for leave to file a surreply (ECF No. 36) is **GRANTED**. The Clerk is directed to set a telephone conference for further scheduling.

**SO ORDERED** this   23rd   day of September, 2016.

                                    s/ William C. Griesbach
                                    William C. Griesbach, Chief Judge
                                    United States District Judge